[No. 1565.]

## John House v. The State.

1. Alteration of Brand—Evidence—Variance.—The indictment charged the alteration of a brand on six head of cattle, from JL to BUD. The proof was that the brand JL was altered by defendant to BUD on some of the cattle, and into ᎭUD on others. Objection was that the change into the last, or ᎭUD brand, not being charged, evidence as to that charge was incompetent. *Held*, first, that to make the charge good, it was sufficient to prove the change into BUD on any one of the six animals; second, that the proof objected to was admissible as *res gestæ*, the evidence showing that the brands were all put on at the same time and place, and that all constituted but one transaction.

2. Same—Charge of the Court—Presumption.—The charge of the court confined the jury to a consideration of the brands alleged in the indictment. *Held*, correct. The presumption obtains that the conviction was predicated upon those brands only.

3. Same—Evidence.—See the opinion *in extenso* for evidence *held* not to constitute, on the part of the defendant, a claim to cattle driven off by him.

4. Same.—See the opinion for evidence *held* insufficient to corroborate the accomplice witness, and hence, insufficient to connect the defendant with the offense.

5. Same—Burden of Proof, to corroborate an accomplice witness, so as to sustain a conviction had upon his testimony, is on the State; and it is not incumbent on the defendant to disprove his evidence.

6. Same—Practice.—Where a conviction for a felony has been had upon the testimony of an accomplice, and the accomplice has been impeached, and it appears that clear and direct testimony was accessible to the State, and such direct testimony has been neither produced nor its non-production accounted for, a new trial should have been granted.

Appeal from the District Court of De Witt. Tried below before the Hon. H. C. Pleasants

The conviction was for the alteration of brands on certain cattle, and the punishment assessed was a term of three years in the penitentiary.

The opinion discloses every material feature of the evidence.

The motion for new trial presented the questions involved in the opinion, and assailed the charge of the court.

*Fly & Davidson* filed an able and exhaustive brief for appel-
lant.

*J. H. Burts,* Assistant Attorney General, for the State.

Hurt, Judge.   This conviction is for altering the brands of
cattle.   Defendant is charged by the indictment with altering
the brands of six head of cattle.   The original brand upon the
cattle was JL.   This brand, the indictment charges, was altered
by defendant into BUD.

Holderman, the accomplice, testified that he saw the defend-
ant change the JL, which was upon all of the cattle, into BUD
on some, and into ꓭUD on others, the curves on the last B
being to the left.   Counsel for defendant objected to the evi-
dence relating to the ꓭUD brand, "because not charged in the
indictment, and further, the proof must show the same brands
as set out in the indictment; and any variance is fatal, and no
proof is admissible to prove any other brands than those al-
leged."

Unquestionably the proof must show that the brands were
altered in the manner charged in the indictment, and a failure
in this would be fatal.   It is not necessary, however, to make
good the charge, that the proof should show that the brands on
all the animals were changed as alleged.   Proof that the JL on
any one of the cattle was changed into BUD, or that BUD
was placed upon either of the cattle, whether it obliterated or
defaced the JL or not, will support the charge in the indict-
ment and sustain the conviction.

It is true that the indictment does not charge that the JL
brand was altered into ꓭUD, but does it follow from this that
no proof can be received relating to this brand?   By no means.
These brands were placed upon the cattle at the same time and
place; this was but one transaction, and the placing upon some
of the cattle of the ꓭUD brand was a part of it—*res gestæ.*   To
illustrate:   A is charged with the theft of five ten dollar bills;
the money was taken from a drawer in which were other valu-
ables, say a watch and chain.   The charge is the theft of the
money; the watch and chain were taken at the same time.
That the watch and chain were taken at the same time certainly
can be shown in evidence upon a trial for the theft of the
money.   And, to place the question in a stronger light, the
charge is theft of the money; the watch and chain were taken

at the same time and from the same place, as fruits of *the crime charged;* evidence that, recently after the theft of the money, the defendant was found in possession of the watch and chain, is and has always been received.

And now back to the case in hand. If defendant had claimed or exercised acts of ownership or control of the cattle branded ꓱUD, we would not hesitate to hold that the claim, or these acts of ownership and control, would be evidence against him, tending to prove that he had placed the BUD brand on the cattle thus branded. There is not the slightest evidence in the record that the jury convicted, or may have convicted, the defendant for placing the ꓱUD brand on either of the animals. To have done so would have been in direct violation of the instructions of the court. Upon this part of the case, the learned judge charged the jury: "The defendant is charged with altering the brand upon certain cattle not his own, without the consent of the owner, and with the intent to defraud. If the jury believe from all of the evidence before them that the defendant did, by himself, or with the assistance of the witness Holderman, alter the brands of any one of the animals described in the indictment, *in the manner charged*, and without the consent of the owner of said animals, and with the intent to defraud, the jury should find him guilty."    *    *    *    *.

A very serious question is presented by the record, which is this: Is there a fact sworn to by any witness, save the accomplice, which tends to connect the defendant with the offense of which he stands convicted? The only evidence which can be claimed to connect the defendant with the offense is that given by the witness Burt. Holderman, the accomplice, states that the alteration of the brand occurred about the tenth of February, 1883. The witness Burt states that, some time in the summer of 1883, William Blackwell came into his neighborhood looking for cattle in the BUD brand. He found five heifer yearlings, and drove them away. That, prior to this, he, the witness, had sent word to defendant to come and drive his cattle from his, witness's, tank, as they were annoying him; that defendant lived but a short distance from witness, and, a day or two after the word was sent, defendant came to witness's house and inquired if his cattle were still troubling witness, and, being answered in the affirmative, "defendant asked him if he had seen any of the BUD; and, looking up, defendant saw a herd of some fifty or sixty cattle, and then remarked,

'Yonder are my cattle now;' and he immediately mounted his horse, and rode to the herd of cattle and drove them off. That in this herd driven off by defendant were his own and Snyder's cattle, and the five heifers branded BUD. That defendant had the management and control of the Snyder cattle. All this occurred before Blackwell drove these five heifers off. These five year-lings in the BUD brand, which were in the herd driven off by defendant, were the same animals claimed and driven off by Blackwell. I have never seen these yearlings since Blackwell took them off." Upon cross-examination, witness was asked "whether the defendant claimed the BUD brand." The wit-ness answered: "No more than I have said."

The five yearlings with the BUD brand were. when driven off by defendant, with a herd of fifty or sixty cattle owned and controlled by defendant.

It certainly will not be contended that there was anything wrong or culpable in driving these yearlings off with the herd owned and controlled by defendant, especially in the light of the fact that there was no appropriation of them, they having af-terwards returned in a bunch to themselves, and were driven off by Blackwell, their owner. If, however, defendant claimed these yearlings, or disposed of any cattle branded BUD or ꓭUD, these, or either of these facts, would be strong crimina-tive evidence of his guilty connection with the offense of which he stands charged. But did he claim these? What said he? He said: "Have you seen any of the BUD brand?" Isolated, does this amount to a claim? Evidently it did not; for how fre-quently is it the case that cattle men, and those who are not cattle men, inquire for brands not their own.

But, again, was this question asked with the view to ascer-tain the whereabouts of this brand, or merely to learn whether the witness had ever seen cattle of this brand? To infer that the defendant claimed the BUD brand from this question is not a necessary or certain inference. The question, then, viewed separately and independently of its immediate surrounding facts, will not justify the conclusion that the defendant claimed the brand. Connected with all of the attending circumstances, is there a claim to the BUD brand shown? Let us return to the surrounding facts. When he asked the question, he looked up and saw a herd of some fifty or sixty cattle, and then re-marked: "Yonder are my cattle now." Defendant claimed cat-tle. What cattle? Evidently cattle in the herd, which con-

tained fifty or sixty head to which he had the right to make claim. From this remark, is it not very unreasonable to presume that he claimed all in the herd, or claimed the five yearlings with the BUD brand? Just at this point these facts are of the highest importance: first, the distance from the witness's house to the herd; second, could the defendant see in the herd the BUD brand on the yearlings? third, did the witness see this brand on the yearlings? and, fourth, some fact showing that when the defendant saw the herd he knew that the yearlings were in it and composed a part of it.

How easy it is for a party to recognize a herd composed of fifty or sixty head of cattle, without observing that yearlings with the BUD brand were in the herd! This being so, how natural and consistent with his conduct the remark, "yonder are my cattle." But, concede that when he made this remark he saw and knew that the yearlings were in the herd, would this remark, "yonder are my cattle," refer to and include the yearlings? Who would assert this as a correct proposition? May he not have referred alone to the fifty or sixty cattle as being his cattle, they being in fact his or under his control? A has a herd of fifty cattle; he sees the herd and says, "Yonder are my cattle." In the herd were five cattle belonging to B; therefore A claimed B's cattle. This statement renders the proposition monstrous. It is illogical, unreasonable, and is not true in fact. If logical and true, then we venture the assertion that there is not a man in the State who gives his personal attention to the cattle business who has not at various times made claim to cattle not his own nor under his control.

But it may be insisted that, as defendant drove off the yearlings with his herd, this fact, taken in connection with the question, "have you seen any of the BUD brand," and the remark, "yonder are my cattle now," makes out a claim by defendant to the BUD brand. Let us examine the matter briefly. The season was very dry and water scarce. The witness Burt owned a tank; defendant's cattle, from fifty to sixty head, frequented the tank and were a source of trouble and annoyance to Burt. Defendant was requested by Burt, his neighbor, to come and take his cattle away. He went and drove his cattle off; with his herd were the yearlings branded BUD. Was he under these circumstances required to cut the yearlings out of his herd? He did not drive them from their accustomed range; at least there is no proof that he did. They returned afterwards and were taken off by the

·owner.   Did this act, to-wit, driving the yearlings from Burt's tank with his herd, prove or tend to prove that defendant claimed them?   Do persons, when they drive with their own stock other people's stock, always intend to appropriate or claim them?   Do we not know to the contrary, that this is a daily occurrence, and is done by the very best of citizens, without claim or pretense of claim?   We have given the facts relied upon by the State to establish the fact that defendant claimed the BUD brand our most careful consideration, and must say that to us this is not made to appear.   If defendant claimed the BUD brand this conviction should be sustained.   But it will not do to presume that he claimed this brand; this must be proved.   How proved?   By some authorities, positively; but by the weight of authority, by circumstances; but the circumstances must lead to no other conclusion. .

Upon this subject the learned author, Mr. Burrill, says: " Rule 3.   The evidentiary facts must all be proved, and the existence of none of them can be presumed.   This is a fundamental rule, applying without variation to all of the elementary facts of which the basis of evidence is composed.   So far as they are concerned, presumption cannot be made the ground of presumption.   This would be extending the principle of induction or inference far beyond the legitimate limits, and lead to endless multiplication of the sources and chances of error.   The juror is allowed, from the necessity of the case, to draw his conclusions from facts by a presumptive process, but the facts themselves must be proved in the strictest sense; that is, they must be shown to be true by the testimony of witnesses under whose observation they have actually and directly fallen.   This rule, however, does not prevent the deduction of the *factum probandum* in the way of inference from leading facts which have themselves been established by inference from the proved elementary facts of the case."

From this rule we learn that in all cases in which a fact, whether the *factum probandum* or a leading fact, is sought to be established by inference, the elementary facts must be proved in the strict sense of the word; that is, by positive evidence. Not only so, but these elementary facts which are sworn to must unquestionably and beyond a reasonable doubt prove a leading fact, from which leading fact the main fact is to be presumed.   This is a natural and just rule.   Why?   Because no ·conclusion can be more certain than the facts from which it is .made.   No man's logic can rise above or be more certain than

his facts. If there be doubt or uncertainty in the fact or facts, this doubt or uncertainty is carried over and enters into the conclusion. The doubt or uncertainty which attends elementary facts is indestructible; its vigor and exact proportions are felt and exist in the conclusion to the same extent as they do in the fact from which the conclusion is made. Indeed all of the uncertainties, weaknesses and imperfections which pertain to a given fact, pertain and attach themselves to the conclusion which is drawn from that fact. If the fountain is corrupt, the stream flowing therefrom must of necessity be corrupt.

Now let us apply these plain and just rules to the elementary facts relied upon by the State to prove that defendant claimed the BUD brand. Do these facts, above alluded to and discussed, lead the mind easily and without being strained or pressed, and with a reasonable degree of certainty, to the conclusion that defendant claimed the brand? We have attempted above to show that they do not. And if they do not show such claim by defendant, we are compelled to concede that the record furnishes no fact sworn to by any witness, save the accomplice, which tends to connect the defendant with the offense of which he has been convicted.

But admit for the sake of argument that there is proof of suspicious conduct on the defendant's part, should, under the peculiar circumstances of this case, this conviction be sustained? This witness Holderman is not only an accomplice, but stands impeached by four of his neighbors; they swear that in his neighborhood his reputation for truth is not good. With such a witness, so feebly corroborated, was it not the duty of the prosecution, if there were other inculpatory facts accessible, to have introduced these facts, and place that which is involved in doubt beyond question?

Now if there be any truth in this witness Holderman, evidently the State had it within its power to have thoroughly corroborated him. This witness swears that he assisted Henry Trammell to drive the two steer yearlings branded with the BUD brand to Gonzales county, and that Trammell told him that he had purchased them from defendant. These facts, if true, not only tend to corroborate the accomplice, but would make a very strong case against the defendant for the theft of the steers. Why was Trammell not used as a witness by the State? To legally convict defendant, the accomplice must be corroborated, and this cannot be done by his own testimony; he can never

corroborate himself. If Trammell purchased these steers from defendant, without explanation on his part, his guilt would evidently appear. Not only so, but his guilt would be established by evidence obtained from a source apparently pure and without taint. Trammell was not introduced by the State, nor is there any reason stated in the record why he was not. The burden was upon the State to corroborate the accomplice, and not upon the defendant to prove or disprove any fact. We are treating of this case and no other. It may be insisted that, as there is some evidence tending to corroborate the witness Holderman, that therefore the State had the right to rest the case upon the testimony of the accomplice and this evidence. We have stated our reasons for holding that the facts relied upon by the State are not sufficiently corroborated.

But what is the safe and just practice in this and all cases? Mr. Burrill, in his work on circumstantial evidence, says: " In the proof that is to be made of these evidentiary circumstances, the two great objects to be kept in view are completeness and correctness. It should be the leading object to present as many facts of the case, not subject to exclusion on the ground of irrelevancy or inadmissibility, as may be practicable. The more the jury can see of the surrounding facts and circumstances, observed a judicious writer, the more correct their judgment is likely to be." We are not to be understood to hold that all the evidentiary facts must, in all cases, be laid before the jury. This is frequently impracticable, owing to a great many considerations; but we do insist that in a case like the one in hand, a case in which a citizen is sought to be convicted of a felony, upon the testimony of an accomplice, an impeached accomplice, when pure evidence is plainly accessible to the prosecution, this should be done, or a failure to do so should be accounted for. We do not believe the accomplice sufficiently corroborated, and, as it appears from the record, if the witness Holderman is worthy of any credence, that there is stronger and purer evidence of defendant's guilt, we are of the opinion that a new trial should have been awarded appellant. The judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Opinion delivered February 27, 1884.